1099 NEW YORK AVENUE NW, SUITE 900
WASHINGTON, DC 20002

**JENNER&BLOCK** LLP

Lindsay Harrison
Tel 202 639-6865
lharrison@jenner.com

**FILED VIA ECF**

May 11, 2020

Hon. Paul W. Grimm
United States District Court, District of Maryland
6500 Cherrywood Lane
Suite 465A
Greenbelt, MD 20770

    Re:    *Springmeyer v. Marriott International, Inc.*, Case No.: 20-cv-00867-PWG (D. Md.) – Joint Letter In Advance Of Initial Conference Call

Dear Judge Grimm:

On April 27, 2020, the Court ordered the parties to coordinate an initial case management conference via Zoom in this case. (Dkt. 20 (the "Order").) The Order instructed the parties to arrange a preliminary conference call with the Court to discuss scheduling, an agenda, and procedures for the Zoom case management conference. (*Id*.) The Order further set out certain case scheduling and discovery issues for the parties to discuss, and invited the parties to file a joint letter in advance of the preliminary conference call. (*Id*.)

The preliminary conference call is scheduled for May 13, 2020 at 2:30 p.m. To address the Court's inquiry, the parties' preference is that the conference take place without a court reporter. The parties respectfully submit this joint letter setting forth the parties' positions on certain preliminary scheduling and discovery issues in this case. As explained below, the Plaintiff and Defendant in this case both agree that this case should not be consolidated into or coordinated with the existing MDL case before this Court.[1]

**I.    Marriott Intends To File A Motion To Dismiss**

Marriott intends to file a motion to dismiss in this case, which Marriott understands is subject to the Court's Order regarding the filing of motions. (Dkt. 11.) The specific grounds for the motion are under consideration. Pursuant to the Court's COVID-19 standing order, Marriott's motion to dismiss is due July 24, 2020.

---

[1] Likewise, the parties do not believe *Rahman v. Marriott Int'l, Inc.*, No. 8:20-cv-00654 (C.D. Cal.) ("*Rahman*"), should be consolidated into the existing MDL case before this Court.

## II. The Events At Issue In *Springmeyer* Are Not Related To The Events At Issue In The MDL

The parties appreciate that the Court, and Special Master Judge Facciola, have spent considerable time and effort overseeing a complex multi-district litigation involving Marriott and a data intrusion that occurred on a segregated Starwood reservations system between 2014 and 2018. *In re Marriott Int'l, Inc., Consumer Data Sec. Breach Litig.*, No. 19-md-2879 (D. Md.). Both Springmeyer and Marriott agree, however, that this case is unrelated to the MDL and no efficiencies would be gained by joining them in any respect. To the contrary, doing so would delay resolution of both the MDL and this case.

First and foremost, the cases concern starkly different circumstances. The Court is already familiar with the facts involved in the MDL, so the parties here will not belabor them. In short, that litigation involves a data incident announced in November 2018 arising from the use of malware, potentially by a state actor, to execute a network intrusion on a segregated Starwood network from 2014 through 2018. That incident had no effect on any existing Marriott system. The data involved included credit card and passport information, mostly encrypted. None of those circumstances exist in *Springmeyer*. *Springmeyer* involves misuse of a web-based application by a franchisee's employee(s) starting in January 2020. The application was designed to be accessed by hotel employees to facilitate guest service in hotels. But in January 2020, the credentials of two employees were misused to look up customer information that the employees did not need in order to provide guest service related to Marriott's Bonvoy guest loyalty program. The information included customer names and addresses, loyalty account information (*i.e.*, account numbers and points balances), and information from partnerships and affiliations linked to Marriott Bonvoy accounts (*e.g.*, linked airline loyalty programs and numbers), but appears not to have included passport or credit card numbers. It appears the employee's purpose was to steal customer loyalty points.[2] It is NOT, as the MDL plaintiffs assert in their letter to the Court, a second, smaller data breach in any way related to or similar to the events involved in the MDL.

Hence, the circumstances of the MDL and *Springmeyer* are entirely distinct—the MDL involves an alleged network intrusion by unauthorized users employing malware, and *Springmeyer* involves alleged misconduct by franchise employee(s) with authorized access to a Marriott application. The cases concern circumstances occurring years apart (in the MDL, access from 2014 to 2018; in *Springmeyer*, access in January and February 2020), on different systems (in the MDL, access to a segregated Starwood network; in *Springmeyer*, access to a web-based Marriott application), using different methods of access (in the MDL, use of malware, potentially by a state actor; in *Springmeyer*, misuse of credentials by franchisee employee(s)), concerning different sets of hotels (in the MDL, Starwood; in *Springmeyer*, Marriott hotels utilizing a particular customer support application), and involving different types of information (in the MDL, including credit card and passport information; in *Springmeyer*, access to guest loyalty information). *See* Exhibit A (chart summarizing factual differences).

Second, because of the different circumstances, discovery in *Springmeyer* will not overlap in any meaningful way with discovery in the MDL. By December 2018, and long before the events

---

[2] It is Marriott's position that any stolen points were restored to the correct accounts after the activity was discovered.

in *Springmeyer*, the segregated Starwood network at issue in the MDL was taken offline permanently. Discovery in the MDL is currently focused on the alleged vulnerabilities in the Starwood network, and the discovery date range ends in early 2019. Likewise, because the Starwood network was segregated, discovery in the MDL has focused on Starwood rather than Marriott. As well, because the MDL involves a network intrusion through use of malware, discovery has—appropriately—not focused on issues pertaining to franchisees, including supervision of hotel-level employees or misuse of authorized credentials by employees. And because the data allegedly targeted in the MDL incident included largely encrypted payment card and passport information—none of which is allegedly involved in *Springmeyer*—discovery related to that alleged harm likewise has no relevance to the alleged harm in *Springmeyer*. Indeed, at this time, Plaintiff's position is that she does not need, or want, the voluminous discovery produced in the MDL pertaining to the 2014 to 2018 data incident.

Third, the injunctive relief sought in the MDL will not address Plaintiff's claims in *Springmeyer*, and the injunctive relief sought in *Springmeyer* will not address any of the plaintiffs' claims in the MDL. Any injunctive relief in the MDL would likely be tailored to the intrusion via malware and alleged vulnerabilities in the Starwood network. The *Springmeyer* plaintiff seeks injunctive relief to safeguard customer information in the separate Marriott web-based application. Both requests are tethered, as they must be, to the specific information and putative classes at issue in the suits. Because the scope of each case is so different, the relief sought in one has no bearing on the other.

Fourth, the cases also involve significantly different putative classes of customers. The data incident at issue in the MDL is alleged to involve information from as many as hundreds of millions of customers—essentially, any guest who made a reservation with a Starwood hotel over the years leading up to 2018. *Springmeyer* involves information for approximately 5.2 million guests—a subset of guests whose information was accessible through the relevant Marriott application. Any overlap among putative class members is purely coincidental.

Given these extensive differences, coordinating discovery in this case with the MDL would undermine, rather than further, the efficient administration of both actions. Combining pre-trial discovery in cases with significant factual differences does not lead to efficiencies, it unnecessarily burdens and complicates *all* of the cases. That is why the Judicial Panel on Multidistrict Litigation regularly refuses to consolidate such cases into a single MDL. For example, in *In re Nexium (Esomeprazole) Products Liability Litigation*, the Panel refused to transfer a potential tagalong case involving the same pharmaceutical company and the same medication, but different injuries that required different evidence to prove. 908 F. Supp. 2d 1362, 1364 (J.P.M.L. 2012); *see also In re Jamster Mktg. Litig.*, MDL No. 1751, 2008 WL 4482307, at *6 (S.D. Cal. Sept. 29, 2008) (denying motion to stay and explaining that the "primary purpose of MDL proceedings . . .[is] not to use [them] as a means to expand the scope of the litigation beyond the core issues identified by the JPML"); *Target Therapeutics, Inc. v. Scimed Life Sys.*, No. C-94-20775 RPA, 1996 WL 241692, at *13 (N.D. Cal. May 2, 1996) (denying motion to relate cases involving catheter technology that involved "significantly different" catheter products), vacated on other grounds, 113 F.3d 1256 (Fed. Cir. 1997). Indeed, in its order creating the *In re Marriott* MDL, the Panel relied on the fact that all of the consolidated cases "arise from the same data breach." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019). That

is not true of *Springmeyer* or *Rahman*. *Cf.* Notice to Counsel, Dkt. 249, *In re Marriott Int'l, Inc.*, MDL No. 2879 (J.P.M.L. Apr. 22, 2020) (declining to issue Conditional Transfer Order for *Rahman*). Coordinating *Springmeyer* discovery with the MDL discovery will delay and complicate both *Springmeyer* and the MDL, without any meaningful benefits.

These differences also strongly weigh against the MDL plaintiffs' recent request that they be permitted to *de facto* consolidate *Springmeyer* into the MDL by amending their Second Amended Complaint to include the *Springmeyer* allegations. The Panel's clerk already concluded that the facts of *Rahman*—and by implication *Springmeyer*—were not appropriate for inclusion in the MDL. *Cf.* Notice to Counsel, Dkt. 249, *In re Marriott Int'l, Inc.*, MDL No. 2879 (J.P.M.L. Apr. 22, 2020). That decision necessarily concluded that *Rahman* (and *Springmeyer*) do not involve "common questions of fact" with the MDL and that consolidation would not "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). An amendment or supplement under Rule 15 is not an appropriate mechanism for the MDL plaintiffs to revisit that decision. If some of the MDL plaintiffs believe they suffered injuries from the events alleged in *Springmeyer*, any such claims are being pursued by Plaintiff in this putative class case. There is no reason to delay and complicate an already highly complex MDL. Marriott will address this issue more fully in its opposition to the MDL plaintiffs' request for leave to amend.

Because the relatedness (or lack thereof) of *Springmeyer* and the MDL is essential to setting an efficient schedule in this case, the parties respectfully request it be included for discussion during the upcoming conference call and Zoom status conference.

### III. A Special Master Is Not Necessary Or Appropriate For This Case

The parties believe a discovery special master is unnecessary for this case. Special masters are used to manage complex pre- or post-trial issues that cannot be addressed "effectively and timely" without the special master. Fed. R. Civ. P. 53(a). This is a single putative consumer class action. Unlike the MDL, this case does not involve multiple tracks of litigation with dozens of separate suits and claims. The consumer information allegedly at issue in this case is also more limited than in the MDL, and the relevant time period much shorter as well. Discovery will be far less complex than the MDL, and is easily manageable within the Court's ordinary discovery procedures. *See Madrigal Auto Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 821 n.2 (2d Cir. 1986) ("[T]he fact that the case involves complex issues of fact and law is no justification for reference to a Master . . . .") (quotations and alterations omitted)).

Nor would it be efficient to extend the mandate of the existing MDL Special Master to this case. As described above, it is unlikely discovery will materially overlap with the MDL. The time ranges, search terms, custodians, and data sources all will be different, making historical knowledge and prior discovery decisions from the MDL less relevant.

### IV. The Parties Intend To Enter Into A Joint Agreed Protective Order And An ESI Discovery Protocol

The parties intend to enter into a joint agreed protective order, with Rule 502 protections, and an ESI discovery protocol. In an effort to proceed as efficiently as possible, the parties will

May 11, 2020
Page 5

use the MDL protective order as a starting point. The parties also will discuss which portions of the ESI discovery protocol from the MDL can be adopted in full or adapted to fit this case, though as explained above, the protocol may differ materially given the different facts and circumstances involved.

The parties expect to present a proposed agreed protective order and ESI discovery protocol to the Court for approval within 45 days of the Zoom case management conference.

Respectfully submitted,

| | |
|---|---|
| */s/   John A. Yanchunis* | */s/    David W. DeBruin* |
| John A. Yanchunis (*pro hac vice*) | Lindsay C. Harrison (*pro hac vice*) |
| Jean S. Martin (*pro hac vice*) | David W. DeBruin |
| Ryan J. McGee (*pro hac vice*) | **Jenner & Block LLP** |
| **Morgan & Morgan** | 1099 New York Avenue NW |
| **Complex Litigation Group** | Suite 900 |
| 201 N. Franklin St., 7th Floor | Washington, DC 20002 |
| Tampa, FL 33602 | Tel: (202) 639-6865 |
| Tel: (813) 223-5505 | Fax: (202) 639-6066 |
| Fax: (813) 223-5402 | |
| | *Attorneys for Defendant Marriott International, Inc.* |
| William H. Murphy III (Bar No. 30126) | |
| **Murphy, Falcon & Murphy, P.A.** | |
| One South Street, 30th Floor | |
| Baltimore, MD 21202 | |
| Tel: (410) 951-8744 | |
| Fax: (410) 539-6599 | |
| | |
| *Attorneys for Plaintiff Springmeyer* | |